# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| CAROL LUCARELLI SPECIAL ADMINISTRATRIX ON BEHALF OF MAGGIELEAN TAYLOR ESTATE, ET AL. | * | CIVIL ACTION NO. 08-0406 |
| VERSUS | * | JUDGE JAMES |
| D V A RENAL HEALTHCARE INC., ET AL. | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is a motion to dismiss [doc. # 52] filed by defendant, DVA Renal

Healthcare, Inc. ("DVA"). The district court referred the motion to the undersigned magistrate

judge for decision pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons assigned below, it is

recommended that DVA's motion to dismiss [doc. # 52] be GRANTED IN PART, insofar as it

seeks dismissal of plaintiffs' claim for punitive damages and Carol Lucarelli as a party plaintiff,

but that the motion to dismiss otherwise be DENIED.

## BACKGROUND

On January 3, 2006, plaintiffs filed the above-captioned suit against Gambro Healthcare

Renal Care, Inc. ("Gambro") and other fictitiously named defendants in the District Court for the

County of Clark, State of Nevada. (Petition). Plaintiffs included the surviving spouse and

children of Maggielean Taylor,[1] and Carol Lucarelli, a court appointed Special Administratrix for

the estate of the deceased. Plaintiffs asserted that Maggielean Taylor died on January 3, 2005, as

---

[1] Taylor's daughter, Geraldine Jackson, initiated suit on her own behalf, and on behalf of the decedent's surviving spouse, Lawrence Taylor, and the decedent's other children, Lawrence Thomas, Jr.; Alphonso Thomas; and Artie Thomas. (Petition, ¶ 1).

a result of hemodialysis treatment that she received at Gambro's facility located in St. Francis

Hospital, Monroe, Louisiana. (Petition, ¶ 6). Specifically, "plaintiffs alleged that [Gambro] was

negligent in maintaining, developing, sustaining, disinfecting, cleaning, sterilizing, testing,

inspecting, examining, investigating and researching the equipment used in the course of her

hemodialysis treatment, and thereby proximately caused the death of Maggielean Taylor."

(Notice of Removal, ¶ 2). Plaintiffs seek compensatory and punitive damages and attorney's

fees. (Petition, ¶¶ 8-11).

The instant case is one of at least 30 cases filed in Nevada state court beginning in 2003

for similar acts of alleged negligence occurring in Gambro's nationwide network of hemodialysis

treatment facilities. (Opp. Memo., pg. 5 [doc. # 58]). On, or about February 16, 2007, Gambro

filed a motion to dismiss the instant suit (and the other related suits) on the grounds that Gambro

did not own or operate the facilities where the hemodialysis patients received their treatment

("wrong defendant motions"). *See*, M/Dismiss; [doc. # 2-16]. In support of its motion, Gambro

adduced evidence that Taylor received her treatment at the Monroe Jackson Street Dialysis

Center, and that the owner and operator of the facility was DVA, formerly known as Gambro

Healthcare, Inc. *Id*. Gambro further asserted that DVA was a Tennessee corporation with its

principal place of business in California and that DVA did not conduct any business in Nevada.

*Id*.

On March 26, 2007, Gambro and the plaintiffs in the various related suits resolved the

"wrong defendant" motions to dismiss by stipulating that plaintiffs would voluntarily dismiss

Gambro and amend their petitions to correctly name the entity that ran each hemodialysis facility

involved in each plaintiff's treatment. (March 26, 2007, Stipulation and Order [doc. # 2-28]).

On April 23, 2007, the instant plaintiffs amended their complaint to substitute DVA as the sole named defendant. (Amend. Compl. [doc. # 2-39]). Plaintiffs did not serve DVA with the amended complaint until August 15, 2007. (Notice of Removal, ¶ 5). Within 30 days thereafter, DVA removed the case to the U.S. District Court for the District of Nevada on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Sept. 7, 2007, Notice of Removal).[2]

Once in federal court, DVA promptly filed a motion to dismiss the amended complaint [doc. # 5], and on September 26, 2007, filed a motion to transfer the case to the U.S. District Court for the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a). [doc. # 7]. In its motion, DVA alleged that Nevada had no connection to any of the events alleged in the complaint. *Id.*[3]

On October 8, 2007, the instant plaintiffs filed a motion to remand the case to state court on the basis that defendant waived its right to remove due to its participation in the state court proceedings. [doc. # 10]. On March 14, 2008, the Nevada court: denied plaintiffs' motion to remand; granted defendant's motion to transfer venue to the U.S. District Court for the Western District of Louisiana; and denied as moot defendant's motion to dismiss the complaint (March 18, 2008, Order [doc. # 37]).[4]

_____

[2] In its notice of removal, DVA asserted that Gambro was a fraudulently joined party whose presence should be disregarded for purposes of removal. However, Gambro was not included as a defendant in plaintiffs' amended petition; thus, it was not a defendant at the time of removal.

[3] DVA further alleged that although venue was proper in the Nevada federal court, that did not mean that the action was properly filed in Nevada state court. *Id*. Nonetheless, DVA acknowledged that it operated other hemodialysis facilities in Nevada. *Id*.

[4] Although the Nevada court did not expressly state the statutory basis for the transfer, it adopted the transfer rationale expressed in the related case of *Estate of Tsosie June v. TRC Four Corners Dialysis Clinics, LLC*, 2008 WL 141912 (D. Nev. Jan. 8, 2008) which found that venue

Following transfer to this court, DVA essentially re-filed its prior motion to dismiss that

the Nevada court had denied as moot.  The motion, filed on August 1, 2008, seeks dismissal

because:

> (a) Plaintiffs fail to meet the statutory requirements for bringing a wrongful death
> claim; (b) the Amended Complaint fails to allege a claim for medical malpractice;
> (c) the Amended Complaint fails to allege any specific cause of injury at all and,
> instead of alleging some specific negligent act or omission, the Amended
> Complaint sets forth a generic shopping list of alternative ways in which a
> provider of hemodialysis services might have acted negligently; (d) the Amended
> Complaint cannot properly rely on the doctrine of *res ipsa loquitur* to maintain an
> action for injury due to allegedly unsafe dialysis treatment; (e) the Amended
> Complaint fails to properly plead any products liability action; and (f) Plaintiffs
> are precluded from seeking punitive damages under settled Louisiana law.

(M/Dismiss, pg. 1).

On August 15, 2008, plaintiffs filed a response to the motion to dismiss wherein they sought

leave of court to file an attached second amended complaint.  On August 27, 2008, DVA filed a

reply brief.  The matter is now before the court.

## 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b) permits dismissal where the claimant fails "to state

a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  "[W]hen the allegations in a

complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency

should . . . be exposed at the point of minimum expenditure of time and money by the parties and

the court.'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007) (quoting 5 CHARLES ALAN

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, 234)).  In

evaluating a motion to dismiss, "the District Court must take the factual allegations of the

---

was proper in Nevada, but that transfer was warranted for the convenience of the parties and
witnesses, and in the interests of justice.  *Id*.  In other words, transfer was effected pursuant to 28
U.S.C. § 1404(a).

complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in

favor of the plaintiff. *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278 (5th Cir.

1993) (citation omitted). The factual allegations need not be detailed, but they must be more

than labels, conclusions, or a recitation of the elements of the claim. *Twombly, supra*.

Moreover,

> the '[f]actual allegations must be enough to raise a right to relief above the
> speculative level, . . . on the assumption that all the allegations in the complaint
> are true (even if doubtful in fact)' and the non-moving party must plead 'enough
> facts to state a claim to relief that is plausible on its face.' This standard 'simply
> calls for enough facts to raise a reasonable expectation that discovery will reveal
> evidence of' the necessary claims or elements.

*In re Southern Scrap Material Co., LLC*, 541 F.3d 584 (5th Cir. 2008) (internal citation omitted).

Nonetheless, a 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted."

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982)

## ANALYSIS

By separate order, the undersigned has granted plaintiffs' request for leave to file a

second amended complaint. (October 24, 2008, Order). "An amended complaint supersedes the

original complaint and renders it of no legal effect unless the amended complaint specifically

refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d

344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th

Cir.1985)). Here, plaintiffs' second amended complaint does not refer to or adopt any earlier

pleadings in this matter; thus, the sole complaint before the court is plaintiffs' second amended

complaint. The undersigned will apply the arguments advanced in defendant's motion to the

current complaint.

## I. **Choice of Law**

When, as here, a case is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court

must apply the choice of law rules of the transferor state, which in this case is Nevada.  *See,*

*Evangelical Lutheran Church in America v. Atlantic Mut. Ins. Co.*, 169 F.3d 947, 949 (5th Cir.

1999) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274 (1990).[5]  In *General*

*Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. County of Clark*, the Nevada

Supreme Court held that "section 145 of the Second Restatement governs choice-of-law issues in

tort actions unless the Second Restatement contains a section that specifically addresses a

particular tort."  *General Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel.*

*County of Clark*,  122 Nev. 466, 134 P.3d 111, 119 (Nev. 2006) ("*GMC*").  For personal injury

actions, Nevada applies section 146 of the Second Restatement which generally requires the

court to apply the law of the state where the injury took place.  *GMC, supra*.[6]  Before the court

will move past this general rule and engage in a most significant relationship analysis of the

principles set forth in section 6 of the Second Restatement, a party must present some evidence

---

[5]  When a case is transferred from a court in another circuit, the precedent of the circuit
court encompassing the transferee court applies to the case on matters of federal law.  *Tel-Phonic*
*Services, Inc. v. TBS Intern., Inc.*,  975 F.2d 1134, 1138 (5th Cir. 1992).

[6]  Section 146 provides that
[i]n an action for a personal injury, the local law of the state where the injury
occurred determines the rights and liabilities of the parties, unless, **with respect to**
**the particular issue**, some other state has a more significant relationship under
the principles stated in § 6 to the occurrence and the parties, in which event the
local law of the other state will be applied.
Restatement (Second) of Conflict of Laws § 146 (emphasis added).
    The Second Restatement contains a section that specifically addresses wrongful death
actions.  *See*, Restatement (Second) of Conflict of Laws § 175.  However, the analysis called for
under Section 175 is virtually indistinguishable from the procedure used in Section 146.
    The Second Restatement's reference to "local law" means that application of the law of a
forum does not include that forum's conflicts of laws provisions.  *See*, Restatement (Second) of
Conflict of Laws, §§ 4 & 8.  Accordingly, renvoi is avoided.

of a relationship between the parties, the occurrence giving rise to the claim, and another forum.

*Id*.

Before proceeding further, the undersigned observes that neither side has cited any authority to establish that Nevada employs choice of law considerations on an issue by issue basis (depecage).[7]  In the Nevada Supreme Court's latest decision on the matter, it engaged in a single choice of law analysis to determine the law applicable to the "cause of action" against each defendant.  *See, GMC, supra*.

In *GMC*, the court noted differences between the laws of Arizona and Nevada regarding issues of comparative fault and duty, but did not separately analyze which law should apply to each issue.  *GMC*, 134 P.3d. at pgs. 118-119, n39.  Instead, the court simply discussed these differences in the context of its overall choice of law analysis to decide which state's law to apply to the "cause of action" against each defendant.  *See*, GMC, 134 P.3d at 119.  Moreover, although Section 146 of the Second Restatement reflects the potential need to apply a significant relationship analysis to a "particular issue," the *GMC* court conspicuously excluded that portion of section 146 from its recitation of the Restatement.[8]  Finally, other courts applying Nevada's choice of law framework have done so solely to determine the law to be applied to an entire cause of action or theory of recovery, not to particular issues.  *See e.g., Lucarelli v. DVA Renal*

---

[7]  Plaintiffs contend that Louisiana analyzes choice of law on an issue by issue basis.  *See*, La. Civ. Code Art. 3515, *et seq*.  While plaintiffs correctly summarize Louisiana law on this point, Louisiana conflict of laws provisions do not apply to this case that was originally filed in Nevada and then transferred here. *See*, discussion, *supra*.

[8]  *See*, fn 7, *supra* (highlighted portion). Conversely, when quoting sections 145 and 6 of the Second Restatement, the *GMC* court included the provisions therein that require choice of law analysis on an issue by issue basis.  *GMC*, 134 P.3d at 110-111.  The court then proceeded to ignore that language.

*Healthcare, Inc.*, No. 08-2067 (W.D. Tenn. Mar. 17, 2008); *Northwest Pipe Co. v. Eighth*

*Judicial Dist. Court ex rel. County of Clark*, 118 Nev. 133, 136, 42 P.3d 244, 246 (Nev. 2002);

*Fisher v. Professional Compounding Centers of America, Inc.*, 311 F. Supp.2d 1008, 1017 -1018

(D. Nev. 2004), affirmed by, *Fisher v. Alfa Chemicals Italiana*, 258 Fed. Appx. 150 (9th Cir.

2007); *Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, 2006 WL 1687451, 3 (D.

Nev. 2006).[9]  In accordance with Nevada law, this court must perform one choice of law analysis

which will apply to plaintiffs' entire cause of action.

In the case *sub judice*, plaintiffs' decedent was allegedly exposed to biofilm contaminants

at defendant's Louisiana facility.  (2nd Amend. Compl., ¶ 6).  Moreover, all of the proper party

plaintiffs are citizens and residents of Ouachita Parish, Louisiana.  *Id*. at ¶ 1; *see* discussion,

*infra*.  Thus, by all accounts, the injury occurred in Louisiana and was felt here.  Except for the

issue of punitive damages, neither side seriously argues that the law of any other state should

apply to plaintiffs' survival and wrongful death cause of action.  Regarding punitive damages,

plaintiffs suggest that defendant's decision-making may have occurred in a state that ostensibly

supports punitive damages, e.g., Tennessee, California, Colorado, and/or Nevada.  Nonetheless,

except for Nevada, plaintiffs do not provide the court with the punitive damages laws of these

other states.  Moreover, plaintiffs do not adduce any evidence that defendant's alleged tortious

---

[9] *But see*, *Yorong v. Total Renal Care, Inc.*, 2008 WL 2705591 (E.D. Wash. Jul. 8, 2008).  In *Yorong*, plaintiff did not contest that the law of the state where the injury occurred generally applied to his cause of action.  *Id*.  Rather, like plaintiffs here, he argued that the law of a different state should apply to the issue of punitive damages.  *Id*.  Although the *Yorong* court did not discount this possibility under Nevada's choice of law analysis, it did not conduct a most significant relationship analysis of the punitive damages issue because it determined that plaintiff failed to introduce evidence to establish where the challenged decision was made.  *Id*.

conduct occurred in these other states.[10] Under the rationale of *Yorong, supra*, plaintiffs have not made the requisite showing to compel the court to engage in a most significant relationship analysis.

Even if plaintiffs had demonstrated that the law of another state is relevant to the issue of punitive damages in this case, that state's interest will not outweigh Louisiana's interest in having its law applied generally to the instant survival and wrongful death cause of action where, as here, the injury occurred in Louisiana, the plaintiffs reside here, the defendant conducts business here, and the defendant's alleged tortious acts were consummated here. In sum, because Nevada's conflict of laws provisions do not endorse depecage, the court must apply one state's law to the entire cause of action. In this case, that state's law is Louisiana – the situs of plaintiffs' injury.

## II. <u>Proper Parties to Prosecute Survival and Wrongful Death Actions</u>

The real party in interest is decided pursuant to state law. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 256-257 (5th Cir. 1980). Louisiana law enumerates an exclusive hierarchy of beneficiary classes authorized to bring survival and wrongful death actions. La. Civ. Code Arts. 2315.1 & 2315.2; *see, Whittington v. Hopfensitz*, 321 So.2d 836 (La. App. 1st Cir.1975) (addressing earlier version of code article). The primary class of beneficiaries includes the decedent's surviving spouse and/or children. *Id*. If any class of beneficiaries exists,[11] then a succession representative or administratrix has no right of action to

---

[10] This is particularly true for Nevada. Although defendant apparently operates some hemodialysis facilities in Nevada, there is no suggestion that Nevada has any other significant connection to the events that gave rise to the instant cause of action.

[11] A succession representative may bring a survival action in the absence of any enumerated beneficiary class. La. Civ. Code Art. 2315.1(B).

bring a survival or wrongful death action.[12]  Indeed, the administratrix of the succession does not

even have the right to recover funeral expenses, as they constitute an element of damages within

the wrongful death action.  *McKenzie v. LeBlanc*,  719 So.2d 710, 713 (La. App. 3d Cir. 1998).

In sum, Carol Lucarelli, as special administratrix of the estate of Maggielean Taylor, is

not a proper party to pursue the instant wrongful death and survival action under Louisiana law.

Both sides seem to suggest that Lucarelli has been deleted from the second amended complaint.

(Pl. Opp. Memo., pg. 14; Def. Reply Memo., pg. 5 n6).  Upon review of the second amended

complaint, however, Lucarelli is still included in the first paragraph.  (2d Amend. Compl., ¶ 1).

Therefore, the undersigned will necessarily recommend that defendant's motion to dismiss Carol

Lucarelli as a party plaintiff be granted.

Defendant seems to further argue that because Lucarelli was not a proper party to bring

the survival and wrongful death actions, the instant suit filed on the one year anniversary of

Maggielean Taylor's death did not interrupt prescription.[13]  However, the original petition also

---

[12]  *See, Robertson v. Wegmann*, 436 U.S. 584, 591-592, 98 S.Ct. 1991, 1996 (1978); *Haas v. Baton Rouge General Hospital*, 364 So.2d 944, 945 (La. 1978) (survival action devolves exclusively to specially designated classes of beneficiaries or survivors);  *Succession of Roux v. Guidry*, 182 So.2d 109, 111 (La. App. 4th Cir. 1966) (succession representative has no right to bring wrongful death action); *Hellpenstell v. Bonnabel Hosp.*, 523 So.2d 887, 889 (La. App. 4th Cir.1988) (succession representatives may not institute survival and wrongful death actions) (citations omitted); and *Jones v. Philco-Ford Corp.*,  452 So.2d 370, 371 (La. App. 1st Cir. 1984) (classes of beneficiaries for survival and wrongful death actions set forth in Article 2315 are exclusive and strictly construed; succession representative is not an enumerated class) (citations omitted).

[13]  In diversity cases, federal courts apply state laws on limitations and tolling.  *Hensgens v. Deere & Co.*,  869 F.2d 879, 880 (5th Cir. 1989).  Under Louisiana law, survival and wrongful death actions prescribe one year from the death of the deceased.  La. Civ. Code Arts. 2315.1(A) & 2315.2(B); *see Guidry v. Theriot*,  377 So.2d 319, 327 (La. 1979), repudiated on other grounds by *Louviere v. Shell Oil Co*,  440 So.2d 93, 97 (La.,1983); *Tuazon v. Eisenhardt*, 725 So.2d 553, 555 (La. App. 5th Cir. 1998).

named the deceased's surviving spouse and children, and stated that her daughter, Geraldine

Jackson, brought the suit on her own behalf, and on behalf of the decedent's other children and

surviving spouse. (Petition, ¶ 1). *Id.*[14]  In the second amended complaint, the surviving spouse

and children of the decedent are again included, but this time Geraldine Jackson is not named in

a representative capacity.  (2nd Amend. Compl., ¶ 1).[15]  In other words, the second amended

complaint joined the surviving spouse and Geraldine Jackson's siblings in their own capacities.

However, because Geraldine Jackson, as a child of the deceased, was a proper party under

Louisiana law to initiate the instant survival and wrongful death action on her own behalf, the

filing of the initial petition interrupted prescription on behalf of the decedent's surviving spouse

and remaining children.[16]  Accordingly, the joinder of Maggielean's spouse and children, in their

individual capacities, was timely.[17]

---

[14]  Similar language is included in the amended complaint.  (Amend. Compl., ¶ 1).

[15]  Jackson is also identified as the "Louisiana personal representative" of the deceased. *Id*.

[16]  "When several parties share a single cause of action, suit by one interrupts prescription as to all." *Jones v. Department of Transp. and Development, State of La.*, 659 So.2d 818, 819-820 (La. App. 1st Cir. 1995) (citing Louviere v. Shell Oil Co., 440 So.2d 93, 96 (La.1983)); *accord, Tureaud v. Acadiana Nursing Home*, 696 So.2d 15, 17 (La. App. 3d Cir. 1997).  Interruption of the prescriptive period by a beneficiary authorized to bring a survival and wrongful death action interrupts prescription on behalf of the other beneficiaries. *See, Jones, supra; Tureaud, supra*.

[17]  If a timely filed petition interrupts prescription against a defendant under state law, the federal court need not address whether an amended complaint relates back. *Hensgens, supra*.  In any event, it is readily apparent that plaintiffs' second amended complaint relates back.  In a diversity case, relation back of an amendment is governed by federal law. *Hensgens*, 869 F.2d at 880.  There are at least two federal rules that permit an amendment to relate back.
First, Rule 17 provides that an action cannot be dismissed following an objection for failure to prosecute in the name of the real party in interest until the real party in interest has had a reasonable amount of time to ratify, join, or substitute into the action. Fed.R.Civ.P. 17(a)(3). Moreover, "after ratification, joinder or substitution, the action proceeds as if it had been

## III. Legally Cognizable Cause of Action

"One of the considerations in determining if a complaint is adequate is an evaluation of whether the defendants realistically can be expected to make meaningful admissions or denials of the allegations of the complaint." *Baker v. Hartford Life & Accident Ins. Co.*, No. 4:08-CV-153, 2008 U.S. Dist. LEXIS 44805 (N.D. Tex. June 9, 2008). Accordingly, plaintiffs must comply with Rule 8's requirement that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. Rule 8's notice pleading standard sets a "low bar." *GE Capital Corp. v. Posey*, 415 F.3d 391, 396 (5th Cir. 2005).

---

originally commenced by the real party in interest." *Id*. The Fifth Circuit has applied Rule 17 to determine the real party in interest to bring a wrongful death action. *Bush v. Carpenter Bros., Inc.*, 447 F.2d 707, 710-711 (5th Cir. 1971). More recently, the court has suggested that substitution under Rule 17 is limited to instances where determination of the correct party to bring the action is difficult or when an understandable mistake has been made. *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) (citation omitted). The instant suit filed on behalf of a Louisiana decedent in Nevada state court arguably satisfies one or both of the foregoing conditions. Moreover, plaintiffs promptly endeavored to substitute the proper parties once it became clear that Louisiana law would govern these issues.

Another rule that specifically addresses amendments and when they relate back is Federal Rule of Civil Procedure 15. Under this rule, an amendment may relate back *inter alia* when authorized under the law that provides the applicable statute of limitations -- in this case, Louisiana law. Fed.R.Civ.P. 15(c)(1). Here, the amendment simply changed the capacity of parties who were named in the original petition and whose claims were previously advanced by another party in a representative capacity. Accordingly, defendant was aware of these claims and has not been prejudiced in its defense. Under these circumstances, the amended complaint relates back to the date of the original pleading. *See, Giroir v. South Louisiana Medical Center, Div. of Hospitals*, 475 So.2d 1040, 1044 (La.1985) (relation back of amendments is less troublesome when the amendment involves merely a change in the capacity of the parties); *Williams v. U.S.*, 405 F.2d 234, 238-239 (5th Cir. 1968) (amendment to permit party to assert claims in her own capacity related back); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 173-175 (5th Cir. 1991) (amendment related back where spouses seeking to substitute in wrongful death action were original parties to the lawsuit).

The undersigned expresses no opinion regarding any limitations defense available to DVA in the wake of its joinder in 2007. Defendant has not raised this issue, and it may be precluded by the parties' joint resolution of defendant's "wrong defendant" motion. *See*, March 26, 2007, Stipulation and Order [doc. # 2-28].

The fountainhead of Louisiana tort law is Article 2315 which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code Art. 2315(A). Louisiana courts employ a duty-risk analysis to weigh a plaintiff's negligence claim. *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005) (citation omitted). Under the duty-risk analysis, plaintiff must establish five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Id.*

Plaintiffs' second amended complaint sets forth a laundry list of duties that were purportedly owed and breached by defendant. (2nd Amend. Compl., ¶¶ 15-17).[18] Plaintiffs specify various ways that defendant did not conform with the requisite duty of care. *Id.* Plaintiffs further allege that defendant's substandard conduct proximately caused Maggielean Taylor to suffer inflammatory responses and an aggravation of her multiple medical conditions which resulted in an untimely death. *Id.* at ¶¶ 18. Finally, plaintiffs seek resulting damages. *Id.* at ¶¶ 19-22. Plaintiffs' allegations suffice to state a tort claim against DVA. *See, In re Southern Scrap Material Co., LLC, supra* (complaint must raise reasonable expectation that discovery will

---

[18] Under Louisiana law, a hospital owes a duty of care commensurate with the patient's condition. *Hunt v. Bogalusa Community Medical Center*, 303 So.2d 745, 747 (La. 1974). The hospital is bound to protect a patient from dangers stemming from her physical and mental impairments as well as from circumstances peculiarly within the hospital's control. *Id.* While DVA is not a hospital, it operated a medical facility that treated patients within a hospital setting. Its duty is arguably analogous to the duty owed by a hospital.

reveal evidence of the necessary claims or elements); *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 985 (5th Cir. 1983) ("We find the pleadings in this case sufficient even though they do not state with particularity the exact proposed theory of relief.").

Defendant next contends that plaintiffs' complaint does not meet the statutory requirements for bringing claims under the Louisiana Medical Malpractice Act, Louisiana ("LMMA"), Louisiana Revised Statute 40:1299.41, *et seq*. and/or the Louisiana Products Liability Act ("LPLA"), Louisiana Revised Statute 9:2800.51 *et seq*. Defendant is correct because, as plaintiffs readily point out, they are *not* seeking relief under the LMMA or the LPLA. (Pl. Opp. Memo., pgs. 15-17).[19]

## IV.  Res Ipsa Loquitur

Plaintiffs allege in their complaint that the "transmission of increased levels of biofilm contaminants into Plaintiffs' decedent during her hemodialysis at Defendant [DVA] is circumstantial proof of negligence under the doctrine of res ipsa loquitur." (2nd Amend. Compl.,

---

[19] Of course, plaintiffs' characterization of their claims is not dispositive should it later be determined that they are governed by the LMMA or the LPLA. *See, Rogers v. Synthes, Ltd.*, 626 So.2d 775 (La. App. 2d Cir.1993) (characterizing suit as one in products liability and redhibition does not mean that the suit falls outside the scope of the LMMA); La. R.S. 9:2800.52 (claimant may not recover from manufacturer for damage caused by product on basis of any theory not set forth in the LPLA). At this juncture, however, all parties seem to agree that the LMMA and the LPLA are inapplicable. For instance, DVA specifically argues that the hemodialysis treatment at issue was a "professional service" not covered under the LPLA, and consequently DVA is not a manufacturer under the LPLA. *See*, La. R.S. 9:2800.52(1). Moreover, there is no evidence that DVA is a qualified healthcare provider as contemplated under the LMMA. *See*, La. R.S. 40:1299.41, *et seq*. In fact, DVA has admitted in another case before this court that it is not a qualified healthcare provider under the LMMA. *See, Moore v. Davita Denham Springs Kidney Care, LLC*, No. 08-0943 (W.D. La.) (DVA's Answer, [doc. # 13]).

¶ 17(j)).  Case law confirms that "[r]es ipsa is a rule of circumstantial evidence which allows a court to infer negligence on the part of the defendant if the facts indicate the defendant's negligence, more probably than not, caused the injury." *Loughlin ex rel. Loughlin v. USAA Cas. Ins. Co.*, 2008 WL 687187, *7-8  (E.D. La. Mar. 10, 2008) (citing *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1362 (La.1992)).[20]  However, applicability of the doctrine is determined at the conclusion of trial – or at least following the completion of discovery.  *See, King v. King*, 253 La. 270, 277, 217 So.2d 395, 397 (La. 1968) (citations omitted).  Accordingly, defendant's challenge to plaintiffs' potential reliance upon the res ipsa doctrine to support their negligence claim is premature at this stage of the proceedings.

## V.  **Punitive Damages**

Exemplary or punitive damages are not recoverable under Louisiana law unless expressly provided for by statute.  *Albert v. Farm Bureau Ins., Inc.*, 940 So.2d 620, 622 (La. 2006) (citation omitted).  It is manifest that plaintiffs' complaint does not implicate the two specific and limited circumstances where exemplary damages are authorized under Louisiana law.  *See*, La. Civ. Code Arts. 2315.4 and 2315.7.  Accordingly, defendant's argument is well-taken.

For the reasons set forth above,

**IT IS RECOMMENDED** that the motion to dismiss [doc. # 52] filed by defendant, DVA Renal Healthcare, Inc. be **GRANTED IN PART**, and that judgment be entered in favor of defendant, DVA Renal Healthcare, Inc., DISMISSING plaintiffs' claim for punitive damages and Carol Lucarelli as a party plaintiff.

---

[20]  Three criteria must be satisfied before the doctrine will apply.  *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 966 So.2d 36, 41 (La. 2007).

**IT IS FURTHER RECOMMENDED** that the motion to dismiss [doc. # 52] otherwise be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 24th day of October 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE