# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **CAROL LUCARELLI SPECIAL ADMINISTRATRIX ON BEHALF OF MAGGIELEAN TAYLOR ESTATE, ET AL.** | * | **CIVIL ACTION NO. 08-0406** |
| **VERSUS** | * | **JUDGE JAMES** |
| **D V A RENAL HEALTHCARE INC., ET AL.** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a motion to dismiss plaintiffs' second amended complaint and to strike certain allegations therein [doc. # 65] filed by defendant, DVA Renal Healthcare, Inc. ("DVA"). The district court referred the motion to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons assigned below, it is recommended that DVA's motion to dismiss and to strike [doc. # 65] be DENIED.

## BACKGROUND

On January 3, 2006, the surviving spouse and children of Maggielean Taylor,[1] together with Carol Lucarelli, a court appointed Special Administratrix for Taylor's estate, filed the instant suit in Nevada state court against Gambro Healthcare Renal Care, Inc. ("Gambro"), alleging that Taylor's January 3, 2005, death was caused by hemodialysis treatment that she received at the Gambro-owned facility located in St. Francis Hospital, Monroe, Louisiana.

---

[1] Taylor's daughter, Geraldine Jackson, initiated suit on her own behalf, and on behalf of the decedent's surviving spouse, Lawrence Taylor, and the decedent's other children, Lawrence Thomas, Jr.; Alphonso Thomas; and Artie Thomas. (Petition, ¶ 1).

(Petition, ¶ 6). Plaintiffs subsequently substituted DVA in lieu of Gambro as the owner of the facility in question. DVA thereafter removed the case to the U. S. District Court for the District of Nevada, and successfully petitioned the court to transfer the case to this district.

On August 1, 2008, DVA filed a motion to dismiss plaintiffs' amended complaint. [doc. # 52]. In their opposition to the motion, plaintiffs sought leave of court to file a proposed second amended complaint which, among other things, formally asserted theories of recovery pursuant to "corporate negligence" and "negligent undertaking." [*see*, doc. # 58]. In reply, DVA reserved its right to challenge the foregoing claims if the court granted plaintiffs' motion for leave to amend. [doc. # 61]. On October 24, 2008, the undersigned granted plaintiffs leave to file a second amended complaint and issued a report recommending that DVA's motion to dismiss be granted in part, dismissing plaintiffs' claim for punitive damages and Carol Lucarelli as a party plaintiff. (October 24, 2008, Order and Report and Recommendation [doc. #s 62, 64]).

On November 7, 2008, DVA objected to the report and recommendation solely on the grounds that it should be afforded an opportunity to challenge the sufficiency of plaintiffs' claims as set forth in their second amended complaint. [doc. # 66]. In conjunction with their objection, DVA filed the instant motion to dismiss plaintiffs' second amended complaint and to strike certain portions thereof. [doc. # 65]. Specifically, DVA contends that plaintiffs' second amended complaint fails to state a claim for corporate negligence or negligent undertaking, but that even if it did, such claims would be encompassed within the Louisiana Medical Malpractice Act ("LMMA"), and subject to the requirements and standards of proof therein. DVA also seeks to strike ¶¶ 9 and 11 of the second amended complaint as "insufficient, immaterial, impertinent, and/or scandalous." Following a delay for briefing, the matter is now before the court.

## I. Motion to Dismiss

### a) *12(b)(6) Standard*

Federal Rule of Civil Procedure 12(b) permits dismissal where the claimant fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, 234)). In evaluating a motion to dismiss, "the District Court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278 (5th Cir. 1993) (citation omitted). The factual allegations need not be detailed, but they must be more than labels, conclusions, or a recitation of the elements of the claim. *Twombly, supra*. Moreover,

> the '[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)' and the non-moving party must plead 'enough facts to state a claim to relief that is plausible on its face.' This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements.

*In re Southern Scrap Material Co., LLC*, 541 F.3d 584 (5th Cir. 2008) (internal citation omitted). Nonetheless, a 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982)

### b) *Analysis*

#### 1) No Proof that the LMMA Applies

DVA contends that plaintiffs' negligence claims "fall within the category of medical malpractice claims and must therefore satisfy the medical malpractice requirements of Louisiana Medical Malpractice Act." (Def. Reply Memo., pg. 8).[2] However, the LMMA unequivocally provides that

> **[a] health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part**. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part, except as hereinafter provided with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under this Part when a claim has been filed against the health care provider for review under this Part.

La R.S. 40:1299.41(D) (emphasis added).

To qualify for coverage under the LMMA, the health care provider must meet certain statutory requirements set forth in Louisiana Revised Statute 40:1299.42(A). *Ginn v. Woman's Hosp. Foundation, Inc.*, 818 So.2d 983, 990 (La. App. 1st Cir. 2002), reversed on other grounds, 842 So.2d 338 (La. 2003). Coverage under the LMMA is strictly construed. *Sewell v. Doctors Hosp.*, 600 So.2d 577, 578 (La.1992). DVA has the burden of proving that it is a qualified health care provider under the LMMA. *Dunn v. Bryant*, 701 So.2d 696 (La. App. 1st Cir. 1997) (citation omitted). Here, defendant has not met its burden.[3]

---

[2] The Louisiana legislature passed the LMMA in an effort to "reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical services to the public." *Hutchinson v. Patel*, 637 So.2d 415, 419 (La.1994) (citation omitted). The LMMA confers two principal advantages upon qualified health care providers: 1) the liability of a qualified health care provider for a patient's malpractice claim(s) is capped at $ 100,000; and 2) before a patient may file a malpractice action against a qualified health care provider in a court of law, she must first present the claim to a medical review panel for an expert opinion on the merits of the complaint. *Id*.

[3] In another case before this court, DVA acknowledged that it was not a qualified health care provider under the LMMA – at least at the time of the events at issue in that case. *See,*

Defendant contends that even if it is not a qualified health care provider, plaintiffs' complaint still sounds in medical malpractice, and thus is governed by the LMMA. While DVA's argument is supported by at least two Louisiana appellate court decisions,[4] it contravenes the plain language of Louisiana Revised Statute 40:1299.41(D) as highlighted above. Moreover, according to the Louisiana Supreme Court,

> "The most significant provisions of the act fit generally in the following scheme. A health care provider (and this category includes physicians, hospitals, . . .) has the option of qualifying under the act. R.S. 40:1299.41(A)(1). **If he or she does not qualify, that person is not covered by the provisions of the statute and the patient's remedy is not affected by the terms and provisions of the statute. R.S. 40:1299.41(D). Thus the patient of a health care provider who has not qualified is no different from any other tort or contract victim**, while the patient of a qualified health care provider (one who has qualified under the act) is regulated by the act insofar as malpractice recovery is concerned."

*Ferguson v. Lankford*, 374 So.2d 1205, 1207 (La. 1979) (quoting *Everett v. Goldman*, 359 So.2d 1256, 1261-1262 (La.1978) (emphasis added)).

Relying upon *Everett v. Goldman*, the Louisiana Court of Appeal for the Second Circuit observed that a healthcare provider's election to be covered under the LMMA is completely voluntary. *Hill v. Brentwood Hosp., Inc.*, 480 So.2d 875, 878 (La. App. 2d Cir. 1985). "In the absence of coverage, the healthcare provider is fully amenable to a tort suit." *Id*.

Finally, the Louisiana Civil Law Treatise further confirms that,

> Section D of the Act explicitly provides that a healthcare provider who does not qualify under the Act by filing the necessary documents and paying the necessary

---

*Moore v. Davita Denham Springs Kidney Care, LLC*, No. 08-0943 (W.D. La.) (DVA's Answer, [doc. # 13]).

[4] *Hardy v. Blood Systems, Inc.*, 794 So.2d 13 (La. App. 3d Cir. 2001); *Cashio v. Baton Rouge General Hospital*, 378 So.2d 182, 185 (La. App. 1st Cir. 1979).

DVA also relied upon *Strickland v. Community Health Systems, Inc.*, 2005 WL 2106110 (W.D. La. 2005). In *Strickland*, however, there is no indication that the hospital was not a qualified health care provider.

5

surcharge is **not in any way affected by the Act and is subject to liability without regard to the provisions of the act**, except with regard to the suspension or the running of prescription of actions.

William E. Crawford, *Louisiana Civil Law Treatise, Tort Law* Vol. 12 § 15.3 (2000) (emphasis added).

In sum, absent proof that DVA was a qualified health care provider under the LMMA, the provisions and protections of the Act do not apply in this case. While plaintiffs' claim may be characterized as a malpractice claim in the sense that it relates to medical treatment that plaintiffs' decedent received at defendant's dialysis facility, it is not a medical malpractice claim subject to the LMMA. Accordingly, defendant's conduct must be analyzed under principles of ordinary negligence. *See, Everett, supra*.

    2) Negligence

Under Louisiana law, the customary sources for delictual liability are found in Civil Code Articles 2315 and 2317. Under either article, plaintiffs' burden of proof is now the same.[5] To determine whether a plaintiff should recover on a negligence claim, Louisiana courts employ a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005) (citation omitted). Under the duty-risk analysis, plaintiff must establish five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to

---

[5] *See*, *Dupree v. City of New Orleans*, 765 So. 2d 1002, 1007 n.5 (La. 2000). Civil Code Article 2317.1, enacted in 1996, "abolished the concept of strict liability" that existed in Louisiana under the pre-1996 version of Article 2317. *Broussard v. Voorhies*, 970 So. 2d 1038, 1042 (La. App. 1st Cir. 2007), *writ denied*, 970 So.2d 535 (La. 2007). Before the 1996 amendments, the "sole distinction between the burden of proof necessary to recover under a negligent action . . . versus a strict liability action . . . was . . . proving the defendant's scienter." *Lasyone v. Kan. City S. R.R.*, 786 So. 2d 682, 689 n.9 (La. 2001); *Dupree, supra*. Article 2317.1 "eliminated that distinction." *Lasyone*, 786 So. 2d at 689 n.9; *Dupree*, 765 So. 2d at 1007 n.5. .

conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Id*.

In its duty-risk analysis, the court should identify "(1) the duty imposed upon the defendant by statute or rule of law and (2) the conduct by defendant that allegedly constituted a breach of that duty." *Id*. Stated another way, negligence by a thing's owner is established with proof that "something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing." *Teel v. State, Dept. of Transp. and Development*, 681 So.2d 340, 343 (La. 1996) (quoted source and emphasis omitted). The court must decide which risks are unreasonable in accordance with the facts and circumstances of the case. *Pitre v. Louisiana Tech University*, 673 So.2d 585, 590 (La. 1996) (citation omitted).[6]

The undersigned previously found that plaintiffs' allegations suffice to state a tort claim against DVA. (October 24, 2008, R&R). Nonetheless, DVA now challenges whether plaintiffs' complaint states a claim for corporate negligence and/or negligent undertaking. However, both theories of recovery are merely alternative means to establish that DVA owed a duty to

---

[6] Whether a given risk is unreasonable "requires a balance of the intended benefit of the thing with its potential for harm and the cost of prevention." *Id*. The determination of whether a particular risk of harm is reasonable is tied to the facts of the case, and is best left to the trier of fact after a trial on the merits. *Sevin v. Parish Of Plaquemines*, 901 So.2d 619, 622 (La. App. 4th Cir. 2005), *writ denied*, 922 So.2d 550 (La. 2006) (citing *Celestine v. Union Oil Co. of California*, 652 So.2d 1299, 1304 (La. 1995)).

Maggielean Taylor under the facts of this case.[7] The parties and the court agree that the duty owed by DVA is similar to the duty owed by a hospital or clinic. (*See e.g.*, Def. Memo., pgs. 6-8).[8] Moreover, there is no question that Louisiana recognizes claims for corporate or administrative negligence in the hospital context. *Id*. Indeed, the governing board of a hospital owes a duty to select its employees with reasonable care and to furnish the hospital with reasonably adequate supplies, *equipment*, appliances and facilities for use in the treatment of patients. *Sibley v. Board of Sup'rs of Louisiana State University*, 477 So.2d 1094, 1099 (La. 1985) (emphasis added).[9] "A breach of one of these duties *or a similar duty of care* which causes injury to a patient or other person may constitute independent negligence by a hospital's governing board, resulting in the hospital's liability even in the absence of any finding of negligent conduct by an employee." *Id*. (emphasis added).[10]

Thus, the only question is whether plaintiffs' complaint alleges facts that implicate a duty owed by DVA to patients such as Maggielean Taylor under Louisiana law. *Sibley, supra*. Defendant contends that plaintiffs' allegations do not raise a cognizable duty. However, plaintiffs' second amended complaint contains allegations that, as early as 2000, DVA was aware

---

[7] *See*, *Bujol v. Entergy Services, Inc.*, 922 So.2d 1113 (La. 2004) (noting that § 324A of the Restatement is used to establish duty or proximate cause).

[8] End stage renal disease facilities are licensed and regulated by the state. *See*, La. R.S. 40:2117.1, et seq.

[9] Those who are entrusted with the care of an unconscious or helpless patient owe a duty to furnish defect free equipment. *Mahfouz v. Xanar, Inc.*, 646 So.2d 1152, 1160 (La. App. 3d Cir. 1994) (citations omitted).

[10] The state also requires end stage renal disease facilities to maintain certain quality of care standards for the health and well-being of patients. *See*, La. R.S. 40:2117.4

of research that had established inexpensive remedies for certain biofilm-associated problems which had been plaguing its facilities. *Id*. at ¶ 14. Nonetheless, DVA opted not to undertake the research-supported upgrades. *Id*.

Plaintiffs' complaint further alleges that DVA failed to assure that its equipment did not pose a significantly increased risk of injury or death due to the unreasonably high accumulation of biofilm and/or the ineffective and untimely disinfection of same. *Id*. at ¶ 17(g). Finally, plaintiffs allege that DVA failed to use reasonable care when delegating authority to those that it knew, or should have known, were predisposed to disregarding available remedies for limiting the risks of biological contaminants during hemodialysis in order to increase company profits. (*See*, Pl. 2nd Amend. Compl., ¶ 15(c)). These allegations, and other variations thereof, echo the hospital-owed duties recognized by the Louisiana Supreme Court. *See, Sibley, supra*.

Defendant contends that plaintiffs seek to impose liability due to DVA's alleged breach of a duty to improve upon the process for the delivery of hemodialysis services. (*See*, Def. Memo., pg. 10). Plaintiffs concede, however, that they are not seeking to impose a duty upon defendant to conduct research. (Pl. Opp. Memo., pg. 7). Rather, plaintiffs allege that DVA actually conducted research that revealed an inexpensive solution to deficient and/or inadequate equipment and procedures used by DVA at its hemodialysis facilities. Despite its knowledge of the research results, DVA inexplicably chose not to implement the inexpensive modifications that would have reduced or eliminated the biofilm problem and purportedly saved the life of Maggielean Taylor. The law would be cold-hearted indeed if it did not provide a remedy should discovery confirm the foregoing facts and establish causation. The court appreciates defendant's interest in avoiding the expense of discovery when a complaint is facially deficient or devoid of

9

merit. At this point, however, the factual allegations suffice to warrant discovery.

In sum, plaintiffs' complaint contains factual allegations sufficient, at this stage, to support all of the requisite elements of a negligence claim under Louisiana law.[11] Having found that plaintiffs' complaint implicates duties owed directly by DVA to plaintiffs' decedent, reliance upon a theory of negligent undertaking will likely prove superfluous. In any event, to properly analyze the issue, discovery will be needed to clarify what services, if any, DVA undertook on behalf of another for the protection of plaintiffs' decedent. *See*, *Bujol, supra* (discussing elements of negligent undertaking claim). Under these circumstances, the court declines to issue an essentially theoretical or academic opinion on the issue.

## II. Motion to Strike

### a) *Rule 12(f) Standard*

Motions to strike are governed by Rule 12(f), which authorizes a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are disfavored and infrequently granted." *U.S. v. Cushman & Wakefield, Inc.*, 275 F. Supp.2d 763, 767 (N.D. Tex. 2002) (*citing Augustus v. Board of Public Instruction of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir. 1962)). As the Fifth Circuit has noted:

> [p]artly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. * * * It is a drastic remedy to be resorted to only when required for the purpose of justice. * * * The motion to strike should be granted only when the pleading to be stricken has no possible relation to the

---

[11] "The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Smith v. Amedisys Inc.*, 298 F.3d 434, 451 (5th Cir. 2002) (citation and internal quotations omitted).

controversy.

*Augustus*, 306 F.2d at 868 (citing *Brown v. Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953).

"A disputed question of fact cannot be decided on motion to strike . . " and, ". . . when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike." *Augustus*, 306 F.2d at 868. When questions of fact or law are present, the court should ". . . defer action on the motion and leave the sufficiency of the allegations for determination on the merits." *Id*.

      **b)** *Analysis*

DVA seeks to strike paragraphs 9 and 11 of the second amended complaint because they contain allegations of healthcare fraud against Gambro which purportedly have nothing to do with DVA. (2nd Amend. Compl., ¶¶ 9 & 11). DVA contends that the allegations are irrelevant and prejudicial. Plaintiffs contend that the allegations are relevant because it shows what DVA's predecessor-in-interest was doing instead of fulfilling its duty of care. Be that as it may, the court is constrained to appreciate precisely how DVA is prejudiced by the recitation in the complaint of the results of a healthcare fraud investigation against another entity. The allegations are a matter of public record, and, while DVA may have an argument which would support an in limine ruling prohibiting the plaintiff from presenting evidence of the investigation to the jury, that argument does not support striking the allegations from the complaint itself, as the complaint is typically not presented to the jury. DVA simply has not demonstrated grounds to support the rare and sparingly granted motion to strike.

For the reasons set forth above,

      **IT IS RECOMMENDED** that the motion to dismiss plaintiffs' second amended

complaint and to strike certain allegations therein [doc. # 65] filed by defendant, DVA Renal Healthcare, Inc. be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 2rd day of December 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE